UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUINTEL WEST,

                  Petitioner,                    Case No.  18-13567

                                             HON. MARK A. GOLDSMITH

v.

WILLIS CHAPMAN,

                  Respondent.

_____/

**OPINION AND ORDER**
**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING**
**CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO PROCEED IN**
**FORMA PAUPERIS ON APPEAL**

Michigan prisoner Quintel West filed a pro se petition for a writ of habeas corpus under 28

U.S.C. § 2254 (Dkt. 1).  Petitioner challenges his 2013 convictions for first-degree felony murder,

assault with intent to murder, first-degree home invasion, armed robbery, conspiracy to commit

first-degree home invasion, conspiracy to commit armed robbery, carrying a weapon with unlawful

intent, and five counts of possession of a firearm during the commission of a felony.  The petition

raises nine claims for relief.  For the reasons explained below, the Court denies the petition. The

Court denies a certificate of appealability and grants Petitioner leave to proceed in forma pauperis

on appeal.

**I.  BACKGROUND**

The charges against Petitioner arose from a fatal shooting and robbery in Saginaw,

Michigan at around midnight on May 29–30, 2012.  The Michigan Court of Appeals summarized

the testimony leading to Petitioner's convictions as follows:

> This appeal involves the shooting death of Michael Kuhlman and related crimes stemming from a robbery and home invasion that occurred while Kuhlman and the other victims were playing poker at Kuhlman's home. Evidence against defendant included the recovery of a handgun in defendant's possession whose forensic characteristics matched evidence recovered from the scene, testimony about defendant's purchase of a consistent-looking gun, clothing found in defendant's possession that matched that worn by one of the robbers, a photograph on defendant's cellular telephone that depicted him posing with cash and a handgun, a victim's cellular telephone found in an area behind defendant's home, and cellular-telephone-analysis evidence showing telephone calls made between Kuhlman and defendant on the day of the robbery.

People v. West, No. 317109, 2014 WL 7157390, at *1 (Mich. Ct. App. Dec. 16, 2014).

Following a jury trial, Petitioner was convicted of the following offenses: first-degree felony murder, Mich. Comp. L. § 750.316; assault with intent to murder (AWIM), Mich. Comp. L. § 750.83; first-degree home invasion, Mich. Comp. L. § 750.110a(2); conspiracy to commit first-degree home invasion, Mich. Comp. L. § 750.110a(2) and Mich. Comp. L. § 750.157a; armed robbery, Mich. Comp. L. § 750.529; conspiracy to commit armed robbery, Mich. Comp. L. § 750.529 and Mich. Comp. L. § 750.157a; carrying a dangerous weapon with unlawful intent, Mich. Comp. L. § 750.226; and five counts of possession of a firearm during the commission of a felony (felony-firearm) Mich. Comp. L. § 750.227b. On June 17, 2013, Petitioner was sentenced to life without parole for the murder conviction, 210 months to 40 years for the assault conviction, 5 to 20 years for both home-invasion convictions, 210 months to 40 years for both armed-robbery convictions, and two years for each felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals. Through counsel and in a pro se supplemental brief, he raised five claims. First, the trial court improperly admitted an expert witness's maps and diagrams. Second, the trial court erred in denying Petitioner's motion to suppress evidence. Third, the trial court erred in giving a flight instruction. Fourth, evidence

2

found following Petitioner's warrantless arrest should have been suppressed. Fifth, trial counsel was ineffective for failing to file a motion to suppress evidence seized following an unlawful arrest. The Michigan Court of Appeals affirmed Petitioner's convictions. West, 2014 WL 7157390, at *6.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims that he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal, People v. West, 871 N.W.2d 172 (Mich. 2015), and denied Petitioner's motion for reconsideration, People v. West, 874 N.W.2d 692 (Mich. 2016).

Petitioner then filed a motion for relief from judgment in the trial court that raised 11 claims, including the following claims that are also raised in his habeas petition: (i) Petitioner was denied a fair trial because a juror stated that an alibi witness would come forward promptly if the witness were telling the truth; (ii) Petitioner was denied his right to an unbiased judge; (iii) ineffective assistance of trial counsel; (iv) prosecutorial misconduct; (v) the trial court improperly denied the motion to suppress allegations of reckless driving and possession of a firearm; and (vi) police withheld exculpatory evidence. The trial court denied the motion. People v. West, No. 12-037699-FC (Saginaw Cnty. Cir. Ct. June 1, 2017). The Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner leave to appeal. People v. West, No. 338903 (Mich. Ct. App. Jan. 3, 2018); People v. West, 919 N.W.2d 260 (Mich. 2018).

Petitioner then filed this habeas petition. He seeks habeas relief on the following grounds:

I.      The M.C.O.A. [Michigan Court of Appeals] harmless error finding, relating to the admission of the prosecution's cellular tower expert witness testimony, was contrary to, or involved an unreasonable application of Kotteakos v. United States, and/or Chapman v. California, where the prosecution's heavy reliance on the expert's testimony had a substantial and injurious effect or influence on the jury's verdict, resulting in actual prejudice.

3

II.     Petitioner's trial counsel was ineffective, pursuant to the Sixth Amendment, for failing to challenge the alleged arrest for reckless driving, pursuant to the Fourth Amendment, and for failing to move to suppress evidence from the arrest on the grounds that the arrest lacked probable cause. The M.C.O.A. finding that trial counsel is not ineffective because the petitioner has not shown the arrest was unlawful is contrary to, or an unreasonable application of, <u>Strickland v. Washington</u>, <u>Giordenello v. United States</u>, <u>County of Riverside v. McLaughlin</u>, and <u>Whitely v. Warden</u>, where counsel knew that there was never a probable cause determination for a reckless driving, and had counsel challenged the arrest the handgun would have been suppressed and there would have been a reasonable probability that the petitioner would have been acquitted.

III.    The trial court's flight instruction over the Petitioner's objection violated the Petitioner's right to a fair and impartial trial, pursuant to the Sixth and Fourteenth Amendment, where the instruction created the presumption that the Petitioner had something to do with the crimes, and relieved the prosecution of its burden to prove presence, and appellate counsel was ineffective, under Sixth and Fourteenth Amendment, for failing to raise this claim on appeal where had counsel raised the claim there would be a reasonable probability that Petitioner's conviction would have been reversed.

IV.    The opinion of a juror, that an alibi witness would come forward right away if they were telling the truth deprived the Petitioner of his Sixth and Fourteenth Amendment rights to a fair trial by an impartial jury where defense alibi did not come forward right away, and appellate counsel was ineffective under the Sixth and Fourteenth Amendments for failing to raise the claim on appeal where had counsel raised the claim there would be a reasonable probability that the Petitioner's conviction would have been reversed.

V.     Prosecuting attorney Christopher S. Boyd violated MRPC 1.12 and Petitioner's due process rights to fundamentally fair proceeding by an impartial judge guaranteed by the Sixth and Fourteenth Amendment was violated where Boyd participated in the prosecution during trial, but was also the district court judge who bonded [sic] the case over for trial. And appellate counsel was ineffective under the Sixth and Fourteenth Amendment, for failing to raise this claim on appeal where had counsel raised the claim there would be a reasonable probability that Petitioner's conviction would have been reversed.

VI.    The trial counsel was ineffective under the Sixth and Fourteenth Amendment, by relieving the prosecution of its burden to prove presence by conceding the elements of the charged carrying a dangerous weapon offense which was charged as being committed at the crime scene, and appellate counsel was ineffective under the Sixth and Fourteenth Amendment for failing to raise this claim

on appeal where had counsel raised the claim there would have been a reasonable probability that Petitioner's conviction would have been reversed.

VII.    The trial court denial of the Petitioner's motion to quash based on oral reckless driving and firearm possession accusations deprived the Petitioner of his due process rights to a fair trial and impartial hearings, pursuant to the Fifth, Sixth and Fourteenth Amendment, where Petitioner was never given notice in the form of an information of the oral accusations.  And appellate counsel was ineffective under the Sixth and Fourteenth Amendment for failing to raise this claim on appeal where had counsel raised the claim on appeal there would be a reasonable probability that Petitioner's conviction would have been reversed.

VIII.    The prosecutor's closing arguments amounted to prosecutor misconduct resulting in a violation of the Petitioner's due process right to a fair trial guaranteed by the Sixth and Fourteenth Amendment. And appellate counsel was ineffective under the Sixth and Fourteenth Amendment for failing to raise this issue on direct appeal where had counsel raised the issue there would be a reasonable probability that the Petitioner's conviction would have been reversed.

IX.    The police failure to disclose to the Petitioner the statement, name, contact information of a witness relating to a stolen cell phone from the robbery violated the Petitioner's Sixth and Fourteenth Amendment rights to a favorable witness resulting in an unfair trial. And appellate counsel was ineffective under the Sixth and Fourteenth Amendment for failing to raise the claim on appeal where had counsel raised the claim there would be a reasonable probability that the Petitioner's conviction would have been reversed.

Respondent filed an answer to the petition, maintaining that Petitioner's fourth, fifth, sixth, and eighth claims are procedurally defaulted and that all of his claims are meritless (Dkt. 9).  Petitioner filed a reply (Dkt. 14) and an amended reply (Dkt. 19).

Under the doctrine of procedural default, a federal court generally may not review claims that a habeas petitioner has defaulted in state court "pursuant to an independent and adequate state procedural rule."  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  The procedural default doctrine is not jurisdictional, and the Court may bypass this question when proceeding directly to the merits is more efficient.  Lambrix v. Singletary, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [merits] question priority . . . if it were easily resolvable against the

habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."). The Court will proceed to the merits of Petitioner's claims without deciding the procedural-default issue.

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases."  Shoop v. Hill, 139 S. Ct 504, 506 (2019).  A federal court may grant habeas corpus relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.  To obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington v. Richter, 562 U.S. 86, 103 (2011).

A state court's factual determinations are presumed correct on federal habeas review.  See 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence.  Id.  For claims that were adjudicated on the merits in state court,

6

habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III. DISCUSSION

**A. Habeas Petition**

The Court addresses each of Petitioner's claims for relief in turn.

**1. Expert Witness Testimony (Claim 1)**

Petitioner's first claim concerns the testimony of the prosecution's expert witness in cellular telephone data. Petitioner argues that the expert witness should not have been permitted to give his opinion about the location and movement of Petitioner's cell phone, particularly that the phone was moving around Saginaw at the time of the robbery and that the phone was near the victim's home.

The Michigan Court of Appeals held that the trial court erred when it allowed the expert's opinion regarding the location and movement of Petitioner's phone. West, 2014 WL 7157390, at *2. But the state court held the error was harmless:

> [T]he expert's own testimony undermined the reliability of this opinion. He acknowledged that he could not testify regarding how Verizon routes calls and that calls did not always connect to the nearest tower. He also stated that call volume was one of the factors that affected which tower would connect with a telephone. He stated that one of the ways that a telephone call could be rerouted to a different tower during a call would be if the telephone was moving, but did not know whether other reasons could cause the telephone to switch towers. He also stated that some of the cellular tower service areas overlapped so that moving a few feet could cause the telephone to switch towers. Nothing in the expert's training told him how far the tower service areas reached. In short, the expert admitted he was not qualified, or at least did not have the underlying factual data, to opine in the instant case about the location of defendant's telephone with reasonable reliability.

> However, because it does not affirmatively appear more probable than not that this testimony was outcome-determinative, any error was harmless. Lukity, 460 Mich. at 495-496. Nothing prevented the jury from drawing its own opinion about the

7

location of the telephone calls from the data presented by the expert, and, significantly, the expert was very forthcoming about the shortcomings in the data he had been furnished.   In addition, defendant's own expert witness further explained the inherent unreliability concerning the location data.   Given the extensive cross-examination of the prosecution's expert, we find that the jury was not left with a misunderstanding of the extent to which the cellular telephone data could be used.   We also note the other very strong evidence linking defendant to the crimes.   Accordingly, any error in allowing the expert's opinion testimony concerning location information was harmless.   See Benton, 294 Mich. App at 199 ("Evidentiary error does not require reversal unless after an examination of the entire cause, it appears more probable than not that the error affected the outcome of the trial in light of the weight and strength of the properly admitted evidence.").

Id. at *2–*3.

Habeas relief is seldom available for a state court's erroneous evidentiary ruling because habeas relief "does not lie for errors of state law."  See Estelle v. McGuire, 502 U.S. 62, 67 (1991). An evidentiary ruling may violate the Due Process Clause and thereby provide a basis for habeas relief where the ruling "is so extremely unfair that its admission violates fundamental conceptions of justice."  Dowling v. United States, 493 U.S. 342, 352 (1990) (punctuation modified); see also Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003) ("When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief.").   The Supreme Court has "defined the category of infractions that violate fundamental fairness very narrowly."  Estelle, 502 U.S. at 73 (punctuation modified).  To violate due process, an evidentiary decision must "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000) (punctuation modified).

On habeas review, a constitutional error is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict."   Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (punctuation modified).  A state court's decision that an

error was harmless constitutes an adjudication "on the merits" to which the "highly deferential AEDPA standard" applies. Davis v. Ayala, 576 U.S. 257, 269 (2015); see also Langford v. Warden, 665 F. App'x 388, 389 (6th Cir. 2016) (explaining that when a state court has held that any error was harmless, courts on collateral review must "give a heightened degree of deference to the state court's review of a harmless error decision").[1]

The evidence against Petitioner was substantial, including that the suspect vehicle matched Petitioner's vehicle, that a victim's cell phone was found in a yard abutting Petitioner's own, and that a handgun that was consistent with evidence recovered from the scene was recovered in Petitioner's possession. Additionally, as noted by the state court, the impact of the expert's challenged testimony was significantly diluted by the expert's own testimony detailing the limitations and shortcomings of his analysis. The Court finds that any error in admitting the expert's challenged testimony did not have a "substantial and injurious effect or influence" on the jury's verdict. Brecht, 507 U.S. at 637.

### 2. Ineffective Assistance of Counsel (Claims 2 and 6)

Petitioner argues in his second and sixth claims for habeas relief that he received ineffective assistance of counsel. An ineffective assistance of counsel claim has two parts. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced

---

[1] Petitioner contends that state court's harmless error determination was contrary to Chapman v. California, 386 U.S. 18, 24 (1967) (holding that constitutional error is reversible unless harmless beyond a reasonable doubt). As noted, on federal habeas review, Brecht is the proper standard. The Supreme Court recently granted certiorari to decide whether, in a habeas proceeding under § 2254, a federal court may grant relief based solely on Brecht or if it must also find that the state court's application of the Chapman standard was unreasonable under § 2254(d)(1). See Brown v. Davenport, No. 20-826, 141 S. Ct. 2465, 2021 WL 1240919 (U.S. Apr. 5, 2021). The outcome of Brown will not affect this case because Petitioner's claim fails even if only the Brecht standard applies.

the defense.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  Because the Michigan Court of Appeals adjudicated Petitioner's ineffective assistance of counsel claims on the merits, AEDPA's deferential standard of review applies to these claims.  Under AEDPA, "the question" for this Court "is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Harrington v. Richter, 562 U.S. 86, 105 (2011).

The Court first discusses Petitioner's claim that trial counsel was ineffective for failing to challenge Petitioner's arrest for reckless driving or to move to suppress evidence from the arrest on the ground that the arrest lacked probable cause.  It then examines Petitioner's claim that trial counsel was ineffective because counsel conceded Petitioner's guilt for the elements of carrying a dangerous weapon.  The Court determines that the Michigan Court of Appeals' decision that counsel was not ineffective was not contrary to or an unreasonable application of Supreme Court precedent.

### a. Evidentiary Issues

In his second claim, Petitioner argues that trial counsel was ineffective for failing to challenge his arrest for reckless driving or to move to suppress evidence from the arrest. Petitioner was identified as a suspect in the robbery of Kuhlman's home because he and his maroon Chevy Blazer had been seen there the day of the robbery.  The day after the shooting, Saginaw Township Police Detective Sergeant Jack Doyle saw Petitioner leave his home and enter his Chevy Blazer.  Doyle followed the Blazer onto the highway.  Petitioner began to drive recklessly and was ultimately stopped and arrested for reckless driving.  After Petitioner had been placed under arrest and while the Blazer was still on the side of the highway, Police Detective Robert Bean reached into the car to begin to perform an inventory search.  Detective

Bean placed his hand on the middle console and noticed it was extremely loose.  He looked under the console and found a fully loaded magazine.  The police did not conclude the inventory search until the vehicle was impounded because the vehicle was on a well-traveled portion of the interstate, and it was safer for officers to conduct the inventory search at the police station.  Once back at the police station, police discovered prescription medicine and a handgun in the vehicle.

Defense counsel moved to suppress the magazine on the ground that the automobile exception to the warrant requirement did not justify the search of the vehicle's console and moved to suppress the handgun on the ground that the police did not follow established policies during the inventory search.  Petitioner argues that counsel was ineffective in failing to move to suppress on the ground that police lacked probable cause to arrest him, that he was not charged with reckless driving, and that he never received a probable cause hearing for the arrest.  He maintains that because police lacked probable cause to arrest him, all evidence obtained in searches after the arrest was inadmissible.

Petitioner raised this claim in a pro se supplemental brief on direct review.  The Michigan Court of Appeals held that the police had probable cause to arrest Petitioner and that there was no authority for Petitioner's contention that, "in order for the evidence to be used, he had to have been charged with the offense for which he was initially arrested."  West, 2014 WL 7157390, at *6.  The court also held that, because the arrest was lawful, counsel was not ineffective for failing to argue that the evidence should be suppressed on the ground that police lacked probable cause for the arrest.  Id.

The Michigan Court of Appeals' holding that probable cause existed for the arrest is supported by the record, and a motion to challenge the arrest would have been meritless.

11

"[F]ailing to make a futile motion is neither unreasonable nor prejudicial."  Jacobs v. Sherman,

301 F. App'x 463, 470 (6th Cir. 2008).  It follows that trial counsel was not ineffective for failing

to move to suppress on the basis of an illegal arrest.  Therefore, habeas relief is not warranted on

this claim.

### b.  Concession of Guilt

In his sixth claim, Petitioner asserts that counsel was ineffective because counsel

conceded Petitioner's guilt for the elements of carrying a dangerous weapon.  At trial, defense

counsel argued:

> It's a heavy burden, beyond a reasonable doubt; they haven't met it.  They didn't
> show that Quintel murdered anybody, that he broke into that house.  That he stole
> any money.  If you are convinced in your own mind that when he was stopped
> and he had that gun in the car that he was carrying a dangerous weapon with an
> unlawful intent, then you're free to conclude that.  And you're free to convict him
> of that charge.  Because he was carrying a dangerous weapon.  We have conceded
> at least the first half of that.  If you think they have proven the second half of that,
> that he had unlawful intent, and you think that was proven beyond a reasonable
> doubt, you can convict him of that.

5/3/13 Jury Trial Tr. Vol VII of VIII at PageID.1736 (Dkt. 10-18).

Defense counsel undoubtedly recognized that the evidence showing that Petitioner had a

gun in his vehicle was overwhelming and that contesting this point would be of little use.  It was

reasonable, therefore, for defense counsel to concede this point for the lesser offense.  The

United States Supreme Court has recognized that defense counsel may concede a defendant's

guilt for lesser offenses in an effort to avoid conviction on more serious charges without

violating the Sixth Amendment.  See Florida v. Nixon, 543 U.S. 175, 189 (2004) (finding that

trial counsel's strategic decision to concede guilt at the guilt phase of a capital trial did not

automatically render counsel's performance deficient); see also Poindexter v. Mitchell, 454 F.3d

12

564, 582 (6th Cir. 2006) (holding that counsel was not ineffective by conceding that the petitioner was guilty of murder but arguing that he was not guilty of aggravated murder) (citing Nixon, 543 U.S. at 189); Clozza v. Murray, 913 F.2d 1092, 1099 (4th Cir. 1990) ("[T]here is a distinction which can and must be drawn between . . . a tactical retreat and . . . a complete surrender.").  Viewed in the context of the seriousness of the other offenses and the strength of the evidence, counsel's decision to concede that Petitioner was carrying a dangerous weapon was not unreasonable.  Therefore, Petitioner is not entitled to relief on this claim.

### 3.  Jury Instruction (Claim 3)

In his third claim, Petitioner argues that his right to a fair trial was violated when the trial court gave a jury instruction on flight.  He claims that the instruction was improper because there was no evidence that Petitioner was one of the three men seen fleeing the scene.

Obtaining federal habeas relief for a jury instruction claim is "a difficult hill to climb." Keahey v. Marquis, 978 F.3d 474, 478 (6th Cir. 2020).  To show that a jury instruction violates due process, a habeas petitioner must demonstrate "both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." Waddington v. Sarausad, 555 U.S. 179, 190–191 (2009) (punctuation modified).  A federal court may not grant a writ of habeas corpus on the ground that a jury instruction was incorrect under state law; instead, the relevant inquiry is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  Estelle, 502 U.S. at 72 (punctuation modified).  The jury instruction "must be considered in the context of the instructions as a whole and the trial record."  Id.

13

The Michigan Court of Appeals held that the evidence presented supported the flight instruction.  West, 2014 WL 7157390, at *5.  Federal courts are bound by state courts' interpretation of state laws.  See Mullaney v. Wilbur, 421 U.S. 684, 690–691 (1975).  Because the Michigan Court of Appeals ruled that the evidence was sufficient to support a flight instruction under Michigan law, the Court must defer to that determination.  See Seymour v. Walker, 224 F.3d 542, 558 (6th Cir. 2000) (explaining that when a state court finds an instruction accurately reflects state law, a federal court on habeas review may not "question the state court's interpretation of its own law").  Therefore, Petitioner is not entitled to relief on this claim.

### 4.  Right to an Impartial Jury (Claim 4)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury."  U.S. Const. amend. VI.  The right to an impartial jury is made applicable to the states by the Fourteenth Amendment.  Turner v. Louisiana, 379 U.S. 466, 471–472 (1965).  "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors."  Irvin v. Dowd, 366 U.S. 717, 722 (1961).  The presence of even a single biased juror deprives a defendant of the right to an impartial jury.  Williams v. Bagley, 380 F.3d 932, 944 (6th Cir. 2004).

Petitioner claims that his right to an impartial jury was violated by the seating of a biased juror, Juror No. 17.  During voir dire, the prosecutor established that Juror No. 17 spent the previous Saturday night with her husband and her family.  4/24/13 Jury Trial Tr. Vol I of VIII at PageID.1046 (Dkt. 10-12).  The prosecutor then asked Juror No. 17 whether, if she were accused of committing a serious crime, her husband and family would delay reporting that she had been with them the night that the crime occurred.  Id.  She replied, "If it was the truth, I would think

14

they would come forward." Id.  Petitioner contends the seating of Juror No. 17 denied him a fair

trial because his own alibi witness waited eight months before coming forward.

Petitioner fails to show that Juror No. 17's response reflected an inability to be impartial.

The prosecutor's question must be considered in the context of the entire voir dire proceeding.

The prosecutor did not introduce the topic of an alibi witness's credibility.  Defense counsel

previously asked multiple potential jurors about their views on an "alibi." Id. at 1031–1032.

Defense counsel's questions were designed to ensure that potential jurors did not see an alibi as

"just an excuse" and that jurors understood that "people that give us alibis are the people that we

are close to." Id. at 1031.  She asked whether any juror would have a "question or issue" about

that. Id.

In addition, Juror No. 17's response did not indicate an inability to be impartial.  Jurors

are tasked with judging witnesses' credibility.  United States v. Bailey, 444 U.S. 394, 414 (1980)

("The Anglo-Saxon tradition of criminal justice, embodied in the United States Constitution and

in federal statutes, makes jurors the judges of the credibility of testimony offered by witnesses.").

Jurors are free to consider any number of factors when assessing credibility.  A witness's delay

in coming forward is one factor that may be considered.  See United States v. Aguwa, 123 F.3d

418, 420 (6th Cir. 1997) (holding that a prosecutor may properly argue that a witness is not to be

believed because the witness delayed in coming forward with an alibi).  Juror No. 17 cited a

properly considered factor for assessing credibility and did not in any way indicate a bias in

favor of the prosecution or defense.  Further, there is no indication that Juror No. 17 did not

follow the trial court's instruction that a verdict must be based only on the evidence presented or

follow the court's guidance on what factors are properly considered when assessing credibility.

15

5/3/13 Jury Trial Tr. Vol VII of VIII at PageID.1740–1741.  The record does not support Petitioner's claim that Juror No. 17 could not be fair and impartial.  Petitioner is not entitled to relief on this claim.

### 5. Former Judge's Appearance as Prosecutor  (Claim 5)

Next, Petitioner argues that he was denied a fair trial because Christopher S. Boyd, the judge who presided over his preliminary examination and found probable cause for a bindover, appeared as a prosecutor in his case.  Boyd's appearance was limited to one day of Petitioner's eight-day trial, and Boyd questioned only the prosecution's expert witness and cross-examined the defense's expert witness.

Petitioner frames the issue as the denial of his constitutional right to an impartial judge.  But this framework is inapplicable here because he does not allege that the judge who presided over his trial was biased.  The question is whether Boyd's limited appearance violated Petitioner's right to a fair trial.  Petitioner argues that Boyd violated Michigan Rule of Professional Conduct 1.12, which applies to former judges and provides that a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge unless all parties consent.  Habeas relief is available only for violations of the United States Constitution.  28 U.S.C. § 2254(a).  Petitioner's allegation based upon the Michigan Rules of Professional Conduct is not cognizable on federal habeas review.

Petitioner relies on Williams v. Pennsylvania, 579 U.S. 1 (2016) to argue that Boyd's appearance at his trial violated due process.  Williams, however, is distinguishable.  In Williams, the Supreme Court stated a state judge must recuse "when the likelihood of bias on the part of the judge is too high to be constitutionally tolerable."  Id. at 4 (punctuation modified).  The Supreme Court found a serious risk of bias or prejudice because the sitting judge previously

16

served as a prosecutor in the case and therefore "earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case." Id. at 8.  Boyd was not the judge at Petitioner's trial, and there is no evidence that by presiding over the preliminary examination, Boyd became aware of privileged or otherwise unavailable information or evidence.  On this record, Petitioner fails to show that his due process rights were violated.

### 6. Fourth Amendment Claim  (Claim 7)

Petitioner claims that the police violated his right to be free from unlawful search and seizure when they conducted a warrantless search of his vehicle.

Where a state "has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976).  "Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." Robinson v. Jackson, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005).  Petitioner availed himself of this process by filing a motion to suppress before trial, and the Michigan Court of Appeals considered and rejected this claim on the merits.  See West, 2014 WL 7157390, at *3–*4.  Accordingly, Petitioner is not entitled to relief on this claim.

### 7. Prosecutorial Misconduct (Claim 8)

In his eighth claim, Petitioner argues that the prosecutor's misconduct during closing argument deprived him of his right to a fair trial.  Specifically, Petitioner argues that the prosecutor suggested that Petitioner's alibi witness perjured himself, argued that Petitioner manufactured Petitioner's defense in response to police reports, and shifted the burden of proof.

17

A prosecutor's misconduct violates a criminal defendant's constitutional rights if it "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned."  Id.  To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair."  Cook v. Bordenkircher, 602 F.2d 117, 119 (6th Cir. 1979).

The Darden standard "is a very general one, leaving courts more leeway . . . in reaching outcomes in case-by-case determinations."  Parker v. Matthews, 567 U.S. 37, 48 (2012) (punctuation modified).  "That leeway increases in assessing a state court's ruling under AEDPA" because the court "cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites . . . other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable."  Stewart v. Trierweiler, 867 F.3d 633, 638–639 (6th Cir. 2017) (punctuation modified).

Petitioner argues that the prosecutor committed misconduct in three ways.  First, Petitioner claims that the prosecutor accused his alibi witness of lying.  It is not improper for a prosecutor to explore a witness's motive for testifying that may bear upon credibility determinations.  See United States v. Akins, 237 F. App'x 61, 64 (6th Cir. 2007).  Here, the prosecutor argued that alibi witness Jermaine Boose was motivated to testify because Boose wanted to help Petitioner, who was like a brother to Boose.  The prosecutor also commented that inconsistency in Boose's testimony was because Boose did not pay attention during "dress rehearsal."  5/3/13 Jury Trial Tr. Vol VII of VIII at PageID.1737.  The prosecutor's arguments

18

did not express his personal belief as to Boose's credibility; instead, he emphasized Boose's personal allegiance to Petitioner from which one could infer a desire to protect Petitioner. This argument did not deprive Petitioner of a fair trial.

Second, Petitioner claims that the prosecutor committed misconduct by arguing that Petitioner's defense was crafted after Petitioner reviewed the police reports in the case. The prosecution was free to argue that a defense has been crafted in response to the prosecution's case. See Portuondo v. Agard, 529 U.S. 61, 69 (2002). The prosecution's argument was focused on the evidence presented at trial and the credibility of Petitioner's defense. Such arguments were not improper.

Third, Petitioner claims that the prosecutor improperly shifted the burden of proof during closing argument by posing a rhetorical question to the jury. Boose testified that Petitioner's business of buying and selling guns and controlled substances was motivated by money. The prosecutor asked why Petitioner would then not also be motivated to commit armed robbery and murder at Kuhlman's house when thousands of dollars were there. This argument did not shift the burden of proof to defendant. The prosecutor simply argued that, based on the evidence presented at trial, it was reasonable to infer that the desire for money would have provided Petitioner motivation to break into Kuhlman's house. This argument did not render Petitioner's trial fundamentally unfair.

### 8. Failure to Turn Over Witness Statement (Claim 9)

In his ninth claim, Petitioner argues that his right to due process was violated when police withheld the name and witness statement of the individual who found a cell phone stolen from

Kuhlman's home. Petitioner fails to show that information exclusively within the control of the police was withheld or that this information was exculpatory.

The Due Process Clause requires the state to disclose to the defense favorable evidence that is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87 (1967). "[E]vidence is 'material' within the meaning of Brady when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." Cone v. Bell, 556 U.S. 449, 469–470 (2009). A reasonable probability in this context means "that the likelihood of a different result is great enough to undermine[] confidence in the outcome of the trial." Smith v. Cain, 565 U.S. 73, 75–76 (2012) (punctuation modified). In sum, to demonstrate a Brady violation, (i) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (ii) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (iii) "prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281–282 (1999).

The witness statement at issue is that of Lacey Lee's boyfriend. Police officer Robert Bean testified that he investigated the recovery of a cell phone that had been stolen from Kuhlman's home. 5/1/13 Jury Trial Tr. Vol V of VIII at PageID.1435 (Dkt. No. 10-16). Bean spoke to Lee; to Lee's boyfriend, whose name was not included in Bean's report; and to Denon Hampton. Id. at 1438. These witnesses reported that the phone had been located in a nearby Rite Aid parking lot. Id. Bean then watched several hours of surveillance video that showed Lee's boyfriend walking through the parking lot but did not show him bending over to pick up a cell phone. Id. Bean returned to Lee's home to ask her about this inconsistency. Id. She

admitted that the Rite Aid story was false and that she had in fact found the phone in her backyard that bordered Petitioner's backyard. Id. at 1438–1439.

The record does not support Petitioner's contention that the name and statement of Lee's boyfriend were withheld. Bean testified that he did not recall the name of Lee's boyfriend and did not write the name in his report. Moreover, Bean testified during a pretrial suppression hearing that he interviewed three witnesses regarding the cell phone and that he did not record the name of Lee's boyfriend. 2/7/13 Hr'g Tr. at PageID.814–815, 825 (Dkt. 10-9). Petitioner, therefore, was aware at least three months before trial that one of three witnesses Bean interviewed was unidentified. Petitioner fails to show that he made any attempt to try to identify this witness or that this information was under the sole control of the prosecution. Owens v. Guida, 549 F.3d 399, 417 (6th Cir. 2008) ("[W]hen the defendant had as much access as the police did to the relevant witnesses, the information is 'not under the sole control of the government.") (punctuation modified). In addition, Petitioner has not shown that the evidence was exculpatory. The substance of the cell phone's location and the conflicting accounts of where the cell phone was found were in evidence. The Court finds no reasonable probability that the result of the proceeding would have been different had Petitioner known the witness's name or, to the extent it existed, seen the witness's statement.

### 9. Ineffective Assistance of Appellate Counsel

Finally, Petitioner argues that appellate counsel was ineffective in failing to raise on direct review the claims raised in the pending habeas petition.

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal as of right. See Evitts v. Lucey, 469 U.S. 387, 396–397 (1985). But a

21

defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  Jones v. Barnes, 463 U.S. 745, 754 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

Id.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990).

Counsel is not ineffective for failing to raise a meritless claim on direct review.  Bennett v. Brewer, 940 F.3d 279, 286 (6th Cir. 2019).  Because the Court has determined that the claims not raised on direct appeal lack merit, appellate counsel was not ineffective for failing to include them on direct review.

### B.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253.  Fed. R. App. P. 22.  Rule 11 of the Rules Governing Section 2254 Proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  R. Governing § 2254 Proceedings 11.  A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

22

In this case, reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrants relief. Therefore, the Court denies a certificate of appealability.

### C. Leave to Proceed <u>In Forma Pauperis</u> on Appeal

The standard for granting an application for leave to proceed <u>in forma pauperis</u> has a lower threshold than the standard for issuing a certificate of appealability. <u>Foster v. Ludwick</u>, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may be granted only if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant leave to proceed <u>in forma pauperis</u> on appeal if it finds that an appeal can be taken in good faith. <u>Id.</u> at 764–765; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(2). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. <u>Foster</u>, 208 F. Supp. 2d at 765. The Court finds that an appeal could be taken in good faith, and it grants Petitioner leave to proceed <u>in forma pauperis</u> on appeal. <u>Id.</u>

### IV. CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus, declines to issue a certificate of appealability, and grants leave to proceed <u>in forma pauperis</u> on appeal.

SO ORDERED.

Dated: January 31, 2022                s/Mark A. Goldsmith
      Detroit, Michigan                MARK A. GOLDSMITH
                                      United States District Judge

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 31, 2022.

s/Karri Sandusky
KARRI SANDUSKY
Case Manager
